Thank you. Okay, Mr. Frisch. All right. Thank you, Your Honor. Good morning. For Mr. Rodriguez, I'm Andrew Frisch, and I'm accompanied by Peter Katz, who represented Mr. Rodriguez in district court. The sentencing was procedurally unreasonable because Judge Daniels did not rule on defense counsel's response and his arguments regarding the prosecutor's argument that she should that the court should send a message by considering gain above and beyond the plea agreement, above and beyond the $65 million reflected in the order of forfeiture. So that's the unreasonableness here. Setting aside the argument about substantive unreasonableness, the procedural error is in the failure to discuss on the record in sentencing, the judge, to discuss this question of whether mentioning numbers greater than $65 million was fair or breach of the plea agreement. That's the error? I would say yes with one gloss, which is that there's nothing in the PSR to indicate – the PSR reflects the forfeiture order of $65 million. There's nothing in the PSR that would put the defendant on notice that the prosecutor is going to come to sentencing and advocate for jail time. Send a message tied to this gain, which she couldn't prove. Well, except that you were on notice because counsel at the trial level submitted a sentencing memorandum before the sentencing hearing saying, Judge, I expect the government will talk about these larger numbers. And the sentencing memo expressly talks about numbers in the range of $70 to $100 million in terms of – it's not technically forfeiture, but in terms of voluntary surrender of assets. So how can you say that the defendant and his team here or there lacked notice that this was on the table when it was expressly fronted in the sentencing memo? It literally says something like, I expect the government will say. Because the judge has to rule on it. Why? Because it's in excess of the plea agreement. If you have a – Well, how is it tied to the plea agreement? The plea agreement – The plea agreement to cover gain, market gain, it was just the losses to the – and the forfeiture – the existing forfeiture numbers and the losses to the victims. This has nothing to do with the losses to the victims. This has to do with his own gain post – after he acquired the assets. Well, the plea agreement makes reference – it's not just that the plea agreement makes reference to the forfeiture order, which it does, but that Judge Daniels allocated Mr. Rodriguez about the terms of the forfeiture order and said, do you understand that you've agreed to an order of forfeiture representing the proceeds of the fraud, which is – So why did he turn over $70 million? If that – was $5 million just a favor? No. So there's a lot of big numbers. There's a lot of numbers in this case and a lot of big numbers. And here's the answer to that. And there's different parts to it. But I think the simplest way of explaining it is this. Independent of the money judgment of $65 million, apart from that, there were assets that were surrendered or forfeited or given back to the government or not contested equal to about – it was disputed between $100 million and $125 million. That includes, I think, what Your Honor is referring to is this $70 million, which represents the value of bitcoins that were given to the government maybe in advance of forfeiture early on after his arrest. But just so we're clear, the $65 million money judgment is separate and apart from all of those assets. I understand, but my point is that you're arguing to us that the key thing that went wrong here is that the government started talking about numbers greater than $65 million and suggesting that that was relevant. And my point is that, in fact, it was the defendant that started that conversation and tried to affirmatively use as a mitigating sentencing factor his willingness to surrender large amounts of money above and beyond the $65 million. But then turns around and says, well, but the government can't talk about that and use it in terms of an aggravating sentencing factor. Here's the problem. The government can make all kinds of arguments, and maybe they're fair or they're not, but the judge has to rule on it. Mr. Katz couldn't have been more adamant in arguing that the argument that she made, expressly asking the judge to tie gain above the $65 million to the amount of jail time imposed, that's a violation of the plea agreement. And Judge Daniels didn't rule on that. That's the problem. I'm sorry. Yeah, sorry. No, I need to understand procedurally how these arguments fit together. To the extent that you're making a procedural and reasonableness sentencing argument, we have an appeal waiver. And so in order to get past the appeal waiver, we have to determine whether the government breached the plea agreement. And if the government didn't breach the plea agreement, then I don't know that we would get to your procedural… It seems to me the front-end issue is us evaluating whether or not there was a breach. Am I misunderstanding the order of logic here? Yes. Okay. Tell me. I think the waiver is not automatically enforceable. What the Court has to look at, or what the Court has looked at in prior cases, is whether the sentencing unfolded in a way that was not anticipated by the plea agreement. And where the plea agreement says the order of forfeiture is $65 million, representing the proceeds, or as it says in the forfeiture order, the property, they can argue whatever they want. But they can't argue that the judge should tie jail time to an amount in excess of that without the judge ruling. You're saying whether or not it was gained independently of any losses to victims. It has to be considered as the amount in question and is therefore limited to the amounts that were discussed at the time of the plea. Exactly. Because the $65 million forfeiture, which is separate and apart from all the other money, the value of the other money… This is being forfeited. This extra money is not being forfeited. It's a money judgment. That's right. And so, therefore, whatever crimes he committed, he committed. There were victims. They've been compensated or they will be compensated for. He profited beyond that because the money was invested in a way that generated huge profits for him. And those profits are available to him to use. So the first answer is he doesn't have any more money. He doesn't. That's what he said in his PSR objections. He doesn't have it. The government is arguing – a couple of points here. The government is arguing that the court should hold him accountable for gain that he hid and that he still had.   But he didn't have it. And he objected to it. And the $65 million is the negotiated answer to that. And for them to come beyond the plea agreement and say to the judge, there's more than $65 million here. And you should give him more jail time because he has all this unsurrendered gain and he's profiting. And you should send a message. If they want to make that argument, I suppose they can make that argument and others. But Judge Daniels remained silent. And this wasn't in the margins of sentencing. Mr. Katz couldn't have been more adamant how procedurally offensive it was for the government to make that argument beyond the four corners of the plea agreement, which embraced the money judgment of $65 million. Did he ask for a hearing on that question or just raise the challenge? Did he ask for – I mean, just trying to figure out procedurally again how this all fits together. I don't believe that Mr. Katz said, I want a hearing on this issue. But in fairness, this came up – and I understand Your Honor's point about the sentencing memo. But this came up at the plea – at the sentencing, rather. And he objected vociferously and said, you cannot consider that. And we don't know – we don't know – here's the problem. We can theorize all this stuff. We just don't know what Judge Daniels was thinking and what he was considering and wasn't – he wasn't considering because he didn't address the argument. And under this Court's precedence, including Armstrong, the Court has to resolve disputed issues before imposing sentence. Disputed issues of fact or guidelines. He doesn't have to decide – the judge doesn't have to sort of go into a likely discussion of resolving every aspect of a defendant's history and characteristics or the nature and circumstances of the offense. There are certain things a judge has to resolve, like the offense level, right? The judge has to address that. But how is – how is it required that a district judge respond to every argument raised by a party? Under Armstrong, a judge has an obligation to make sure that a sentence is not influenced by an erroneous fact. This fact was objected to in defense counsel's objections to the PSR. There was an argument – The judge heard the argument by the government and then heard the objection, and then he sentenced. Maybe. You know, it's not like there was something missing. There is something missing. The only thing that you think was missing was the fact that the judge didn't himself speak about this. He's an important player at the sentencing, and I disagree. You may be right, Your Honor. As my colleague has pointed out, not everything that's argued at a sentencing. Fair enough. But this was a big one, and it may well be that Judge Daniels rejected this argument and decided to impose a sentence, again, twice, almost twice, the greatest sentence he'd ever imposed on a guilty plea nonviolent defendant. Which is not the 3553A factor, right? The 3553A tells us to avoid unwarranted disparities among similarly situated defendants, not to avoid disparities of any kind in a judge's personal sense of sentencing. I take that point. I'm just responding to Judge Walker's point about what Judge Daniels was thinking. Maybe he was thinking, I think this is a good sentence. I reject Mr. Katz's arguments. But he didn't say it, and this argument wasn't in the margins of a sentencing memo or even at the margins at sentencing itself. It was an adamant dispute about whether or not Mr. Rodriguez should get more jail time for gain, which he didn't have and which was above what the plea agreement set out. He was saying that he got more jail time because of it, but that itself is not expressed. I'm going to give – I would give X, but because of this extra amount of money, I'm going to give X plus. He didn't say that, did he? Exactly. We don't know. Judge Walker, we don't know. But he just decided what the sentence would be after hearing all the arguments. Maybe. But we don't know. But there was an erroneous fact advanced by the government to which there was an objection. It was beyond the four corners of the plea agreement, and we don't know what Judge Daniels was thinking because he didn't say anything. Yeah. You've asked for time for rebuttal, I assume. I have, yes. So the government may say something that you'd want to rebut. Okay. Thank you. All right. I think we'll move on to them. Thank you. Appreciate it. Attorney Vogel. Thank you. Good morning. May it please the court. My name is Cecilia Vogel. I'm an assistant United States attorney here in the Southern District of New York. I represent the United States on this appeal, and I represented the United States below in the district court. This defendant pled guilty with the plea agreement in which he waived his right to appeal any sentence within or below the stipulated guidelines range of 188 to 235 months. The government argued for a below-guideline sentence of 160 months. The defendant received a substantially below-guideline sentence of 144 months. The defendant's appeal waiver is enforceable because the government fully complied with the plea agreement. So I'm sort of trying to think this through because I think the burden on the government in connection with plea agreements is high, right? And so I understand this sort of technical argument that what the government did doesn't necessarily run afoul of some specific provision of the plea agreement, but I'm just wondering generally if the spirit of the plea agreement wasn't that there's a dispute about all of these amounts. We're going to stipulate as to a forfeiture arrangement. We're going to stipulate as to the loss amount for the purpose of the guidelines calculation. Is there something – why isn't it inconsistent with the spirit of that deal to then come in and say, by the way, court, under 3553, we think you should treat the gains or losses, depending on how you want to describe it, as greater than all of the stuff we stipulated to? So I think Your Honor is getting at a question about fairness, and everything about this proceeding was completely fair. Okay. First, I want to be clear, and it was clear about this below. There is a distinction between loss to the victim and profit to the defendant. We have been consistent on that point throughout. What we're talking about here are appreciation and gains to the defendant. The victim's invested primarily in cash. The defendant converted that to bitcoin. As everyone knows, that has appreciated substantially over the years, and so it's that money that we are talking about here. So there's absolutely nothing to do with the loss stipulation with respect to the guidelines. No, I'm thinking more about the forfeiture. I'm thinking if you're a defendant, and is it reasonable to understand the government's stipulation as to the forfeiture amount? And I realize the word the isn't there when it says proceeds, but whether it's reasonable for the defendant to understand that we've all agreed that this chunk of money represents the forfeitable amount, which would typically include gains, and I would think appreciation of the gains. Your Honor, here, the plea agreement, the forfeiture, is negotiated, and it caps. Frankly, here it's to the defendant's benefit. It caps the amount that he agrees to forfeit, and that is all that provision in the plea agreement says. That's it. But you wouldn't expect the government to seek a forfeiture amount that was less than what it actually believed the forfeitable amount to be. I think here, Your Honor, there were some complicating factors in terms of identifying these additional assets. They'd been dissipated, and there was no way to further identify them as specific property, and it was very challenging to value them. In addition, we had recovered a lot of money that we felt we would be able to return a significant amount of funds to victims. So there are reasons why. Well, you recovered more than the victims required, right? I mean, were you going to prorate the amount beyond what the victims actually lost and give them portions of the difference between that and the $65 million? Your Honor, in this case, restitution has been set aside, and we are going to follow the remission process. So what victims received has not been going to receive has not been determined. But it is based on their loss, meaning what they put in. Right. I guess the question is does their loss, who's going to get the benefit of the gain reflected in that $65 million vis-a-vis the base? That is the purpose of forfeiture, Your Honor, is that defendants are not to hold on to. I understand that, but I'm just curious. I think I'm following up on my colleague's question that the victim puts in $100. Meanwhile, that $100 balloons to $1,000. The forfeiture amount reflects the $1,000. Is that victim going to get back their $100, or are they going to get back the $1,000 that is traceable to their $100? The victim gets back the amount that they put in. But here, Your Honor, the $65 million, the additional funds are reflected in a specific property. There's certain bitcoin that was included in a specific property, and that's what's appreciated in value. So to the extent there's anything extra there beyond $65 million, that gets forfeited to the government. But I just want to return to Your Honor's original question about the fairness of the proceeding. The plea agreement provides that the government and either party can present any facts relevant to sentencing under 3553A. And this factor about whether the defendant has kept any illicit proceeds and successfully hidden them is relevant to the 3553A factors. And the government specifically tied that argument to the 3553A factors in its sentencing submission and in its arguments to the court. It's relevant to deterrence. It's relevant to both specific deterrence and general deterrence. It is relevant to the defendant's acceptance of responsibility and remorse, which, again, is relevant to deterrence and protecting the public. The court is evaluating whether the defendant is likely to reoffend. And whether the defendant has successfully hidden any proceeds is relevant to that determination. And the government could have asked for an above-guideline sentence in this case, right? That's correct. And that magic sort of the out clause is in this plea agreement, that as long as you stick to the 3553A factors and you don't go outside the guideline stipulation, either party is permitted to argue for a sentence outside the guidelines. That's right. And in this case, the government argued for a below-guideline sentence, which is notable. I have not found a single case in which the court has held that the government has reached a plea agreement where the government argued for a below-guideline sentence and where the defendant received a below-guideline sentence. Your Honor, unless you have other questions. Your adversary made the point that Judge Daniels didn't comment on this argument, didn't rule on this argument, and that he tacked on extra years, the argument goes, because of the argument that the government made. And so he got a longer sentence than he would have otherwise. And the judge didn't, in effect, rule on this particular dispute. About whether there was a breach in the plea agreement. Is that your question? Yeah. So a couple of points. Well, no, I thought, well, maybe I misunderstood. I thought it was, didn't rule on the fact that he was, what effect he was going to give to the amount beyond $65 million that the government was arguing in connection with 3553. So a couple points in response to that. First, again, the appeal waiver precludes any consideration of these procedural issues, given that the sentence was below the guidelines and the government argued for below-guideline sentence and didn't argue for any sentencing enhancements. That's the first point. All these procedural issues must be set aside on that basis. But second, Judge Daniels did say at the end of the sentencing that he considered all the arguments made by the parties. And he considered the PSR objections, which included objections to facts in the PSR describing that the defendant obtained Bitcoin after his arrest. The judge explicitly stated he considered all of those arguments and he adopted the facts in the PSR. And that is sufficient under the case law to resolve these disputes. So they have been resolved. And in the statement of reasons, he doesn't refer to deterrence at all. So it's, it doesn't check that box. So it's possible that the court didn't, didn't really, didn't do anything in response to the government's deterrence arguments. That is possible, Your Honor. But I also want to note, the judge actually credited the defendant's arguments about voluntarily surrendering the Bitcoin. So in the context of these arguments, the judge considered that point. Right. But I'm saying he didn't, he didn't say that he posed the sentence based on the deterrence factor of 3553. Specifically, no. He did not state that. Your Honor, unless you have other questions for me, the government rests on its submission. Our position is that the appeal waiver is enforceable and that precludes these arguments that the defense is making. Thank you. Appreciate it. Mr. Frisch. Thank you, Judge. So just a few things in rebuttal. First of all, in answer to your, something you said, the word the is on page in the appendix at A63, referring to the proceeds equivalent to a value of $65 million. That's in the forfeiture order. In addition to the use of the word the allocution. Wait, in the plea agreement or the forfeiture order? It's in the forfeiture order, which is referred to in the plea agreement. Oh, I see. You're saying it's incorporated by reference into the plea agreement.  That's right. So, because the main text of the plea agreement that addresses that doesn't have the the, it just says which represents proceeds. I think so. And then if you go, I think that's right. And then if you go to the forfeiture order, you see at page A63 the word the proceeds. And then, of course, Judge Daniels specifically allocated Mr. Rodriguez, referring to them as the proceeds or words to that effect. But the word the is in there at $65 million. And when's the forfeiture order entered? I think the preliminary order, I don't, I'm fairly certain it was entered at or about the same time as the plea. I can't be 100 percent certain because I don't have it in front of me, but I think that's right. Is that right? We think that's right, as far as, as best as we can remember. With regard to, I just want to make this point about what Judge Daniels was thinking and what he was not thinking and what we should assume, given the consequences to Mr. Rodriguez, without Mr. Dan, without Judge Daniels specifically addressing this very significant argument, which is that the extraordinary mitigating circumstances about Mr. Rodriguez's, the conditions of his confinement, which are extraordinary, even under the circumstances that we've experienced at the MDC. This was Essex County, not MDC. But even during COVID and even the things that we hear about and see every day in this court and in the papers, this was pretty, this was pretty serious. And so if we're trying to divine, without Judge Daniels saying anything, what he was thinking, for him to give, to give this sentence, given that Mr. Rodriguez was attacked by another inmate. But he said he took conditions of confinement into account. He did. But we don't know the question. That's not the question. We know he took that into account. The question is whether he took into account this other argument about sending a message because of gain that Mr. Rodriguez. Okay. I just wasn't sure why we were talking about the conditions of confinement. I'm just going back to Judge Walker's concern about what Judge, or not his concern, but what suggested to me might be a concern about what Judge Daniels was or was not thinking, absent a specific statement as to this issue in dispute. And I don't think, with all due respect to Judge Daniels, I don't think a judge saying, I've considered all the arguments. I mean, you know, I've been to a lot of sentencings, and I can't remember one where a judge didn't say that. And so whether that's boilerplate or whether he really considered this, I don't think the consequences to Mr. Rodriguez should be put into a category, well, he probably considered them. I think we need to know for sure. And if the case goes back down on a remand and Judge Daniels or another judge, if it's reassigned, says, no, I considered it, and that's fine. That's procedurally reasonable. But we're not there right now. We don't know. Well, that may be, but you don't get to make the appeal unless there's a breach by the government. Well, that's the argument that you have to address, rather than the merits. I hear that. And I can only cite the court to Rosa and Ritchie, which are two cases in which the court in the aggregate, I can't remember which says what, but in the aggregate say that they're not automatically enforceable without determining whether the sentence was reached in a manner not anticipated by the plea agreement. And if the plea agreement talks about gain or the proceeds of $65 million, as you sit and I stand here today, we don't know whether the sentence was based on an extraneous factor or not. We just don't know. And so the remedy, you know, I'm not asking you to issue a bus ticket for Mr. Rodriguez to go home. I'm just saying send it back. We prefer a judge, a different judge, but that's the court's call if the court remands it, just so we're sure, given the magnitude of the consequence to Mr. Rodriguez. Thank you. We appreciate your arguments. We'll take your advisement.